Good morning. May it please the Court, John LeMaster on behalf of Appellant Freeport-McMoran Corporation. And you are sharing your time with the Gila Valley Irrigation District? Correct. We ceded three minutes to them at the end of our argument. Your Honors, this case raises four issues on appeal. The first issue is the appellate jurisdictional issue. The second issue is whether the district court erred in granting judgment as a matter of law because Freeport failed to prove a prima facie case of no injury to the tribe. The third issue is whether the district court erred in finding that Freeport had abandoned 1.4 acres of water rights associated with one of the applications. And the fourth issue is whether the district court abused its discretion in failing to allow Freeport to amend its severance and transfer applications to conform to the evidence presented at trial under Rule 15. I have one preliminary question. Yes. What is the status in the district court of the remaining transfer applications? All of Freeport's 59 applications have either been denied or withdrawn. The status, if you want more, is ten of them were tried to the court as the ten test cases which we're here on. I believe 27 of them were withdrawn because of the retirement of lands, the 1,000 acres which we presented on the record, and then 22 Freeport moved to the court to deny those for the reasons set forth in the August 3rd order from which this appeal was made. So does that mean is there an appeal behind this one? There would be, Your Honor. The what we're waiting on in the court is the all 49 applications not decided on the ten counterclaims remain. And those counterclaims will be decided once those counterclaims are decided. If this court doesn't have jurisdiction, Freeport plans and intends to appeal those at the time they become full. Was the trial court ever given an opportunity to render a 54B certification? Yes, they were, Your Honor, and the court refused to do that. This is Judge Bolton. In fact, she said that the requirements of Rule 54B are not satisfied. She did say that, Your Honor. So your position, I gather, is that there is no jurisdiction. Freeport has taken the position throughout this appeal that there's no jurisdiction. And what you have here is a conflict between the 1993 Severance Transfer Rule, which provides each application is individually filed, submitted, and decided. And once each application is either granted or denied, you can appeal. If there wasn't the administrative consolidation in the Globe Equity 61, which is a subcase of the Globe Equity 59, Freeport's position would be each of these ten applications would be immediately appealable. The problem is, is the court consolidated all 59 of Freeport's applications into an administrative subcase of Globe Equity 59. So only ten of those. But quite deliberately, in order to deal with all of those separately, did she not? I'm sorry, Your Honor. She did that quite deliberately so that they could be dealt with as a unit. She dealt with the Freeports as a unit, but she picked the ten cases as test cases to guide not only the further Freeport, but all proceedings. So there is some dichotomy. Freeport appealed this to protect its rights because Freeport's position, this isn't an easy issue in a post-judgment proceeding with an injunction, and you have all these applications. Freeport's intent is to have these issues decided. It's a little odd, isn't it, for the appellant immediately to argue against its own jurisdiction? It's an unusual position, Your Honor. It's peculiar. But the fact is, is that in the court below, what occurred is the Gila River Indian community made an application saying that these ten were final and made an application for fees. Freeport took the position in the court below, no, you have to have the Globe Equity 61. Freeport decided because the issues are not clear, Freeport has to protect its appellant's right. And it made this. And at one point, the Court demanded that Freeport brief jurisdiction on an order to show cause. Freeport did that, and Freeport's told to brief it on the merits. Freeport's here on the merits. Freeport is not sure what the answer is on jurisdiction, but what Freeport wants to do is protect its rights on the merits. Kagan. I mean, it strikes me that this case has all been briefed, whether it should have been or shouldn't have been. I agree with that, Your Honor. And the question is, is there some expeditious way to get to the merits of this case without spinning a lot of wheels on the jurisdictional question? And that raises the question of what's the likely timeline. Your Honor, I'm not sure what the timeline is. As I said, Freeport's, all of Freeport's applications have been withdrawn or denied. There is a status conference, I believe, set for, or maybe it's not a status conference, a decision of how the objecting parties are going to proceed on their counterclaims in January. I'm not sure what that timeline is going to be. I do agree with the Court that this case has been fully briefed on the merits from Freeport's perspective, and Freeport's ready to do whatever this Court decides on the jurisdictional issue. And finally, on the jurisdictional question, I gather that on the 1.4 acres, your position also is that there's no jurisdiction. On the 1.4 acres, again, because of the thing, yes, it would be the same. However, if the – because the entire case deals with an injunction under 28 U.S.C. 1292, a modification of an injunction is an interlocutory appeal that can be appealed, and that's going to be true for all of the issues. Because the failure to grant a severance transfer is a failure to modify an injunction on 1292. Freeport's position has been it's Freeport's option to raise 1292. Freeport had not chosen to do that at that time. But Freeport's position is if you're going to accept jurisdiction under 1292, all of the issues are available for review under 1292 because they constitute a denial of a modification of an injunction. Scalia. Counsel, if you persuade us that there is no final order and, therefore, we have no jurisdiction, what happens next? The case, from Freeport's perspective, will go down. The counterclaims will be decided one way or another. A final judgment in the Globe Equity 61 will occur. And from Freeport's perspective, they're going to do everything they can. So that's going to be decided on the August 3rd order, which is what we did on Freeport's applications. All of the 22 applications that weren't decided and not withdrawn were denied on the basis of the Court's August 3rd, 2010 order. Freeport's view is to have that same thing happen to the counterclaims in the most expeditious way possible to appeal this order. So the counterclaims have not yet been addressed by Judge Bolton? Correct. So that not all of the issues with respect to Freeport have been adjudicated? Correct. The counterclaims remain. Okay. I'm going to move on to the merits, then. The first error that Judge Bolton made relates to her granting the tribe's motion for judgment as a matter of law. What Judge Bolton did is she said that Freeport did not prove a prima facie case of no injury. Now, a prima facie case is a case where you present evidence and an inference can be drawn that you presented enough facts to prevail of no injury. There she was wrong because the facts presented here include the decree that sets forth the rights of the parties, the priorities of the tribe to make a call on its water, the rate of diversion, the limitation on the amount of acres that can be irrigated, and 120,000. Does this matter in the following sense? There was or wasn't a prima facie case. There was evidence that, in fact, the tribe does not necessarily get that water for various logistic and practical reasons. No, Your Honor. What the evidence was, was Freeport rested on the basically the documents of the case. The United States and the tribe presented testimony from two people at Stetson Engineering, and they said there's a possibility of injury. What they did is they raised issues. What are the returns? I thought there was evidence that in the last umpty umpty years, whatever it was, there, in fact, the tribe has not necessarily gotten the water when it's made calls on the water because of practical reasons. Well, that's true. There are times the tribe doesn't get water, but that doesn't mean that these change in use injury or change in use applications cause injury. Is this Court has decided time and time again in the Alpine case that their legal right to get the water is not as a practical matter translatable into water. No. What it means is, is that you have to look at the decree, and the decree says set forth those rights. And this Court has stated it in the Alpine decision to the extent that you can't go back and reopen the decree because it's not providing at times what the tribe wants. The question is, in terms of proving an injury because of transfer, is it sufficient for you, have you proven it simply by proving what the preexisting legal rights are? That's what you're arguing, right? Yes, but the preexisting rights include the fact that you're in a desert, and sometimes in the summer, the river runs dry. That condition exists regardless of whether these transfer applications are granted or not. The injury has to be caused not by this baseline of existing condition. It has to be caused by the transfer. And that the evidence wasn't presented on. To rule on that, no transfer can ever take place in the globe equity proceeding if the tribe doesn't always get its water, and that's not the law. This Court has rejected that position in the Alpine and Oreditch cases time and time again. Yeah. So the issue is, do these cause injury? And they don't. The burden then shifts to the tribe. They shouldn't have come in and said, there's all these issues. They could have said, these transfers cause injury. They didn't do that. And the Judge Bolton was wrong in granting that motion. So on your theory, then, essentially, you've made out a prima facie case in every transfer, or anybody who is trying to transfer junior rights has necessarily made out a prima facie case. So the burden is always on the senior water holder, water rights holder, even though the statute says the burden is not on the senior water rights holder. There may be specific circumstances under a transfer where you might have to prove  Okay. Let me ask you this. Do you want to touch on the abandonment on the merits? And then I think that perhaps, Mr. Eckstine, you may wish to save some time for rebuttal. Thank you. And I'll briefly touch on abandonment then. The issue on abandonment is, is that the judge erred. And there are two timeframes that are important in looking at abandonment. Remember, the primary issue in abandonment, the Paramount inquiry, is intent. And when you look at intent, sometimes, most times, it's not, I intend to abandon, so you look at the actions of the parties. And you have two timeframes at issue here. Pre-1997 and post-1997. Pre-1997 is important because up until 1997, the water commissioner, who's an officer of the court, allowed every party in the decree to take the full allocation of water, regardless of the amount of acres then being irrigated. So the water commissioner, officer of the court, says, take all your water. Well, there's no intent to abandon because that can be found, because in order to find an intent to abandon, to infer it, you have to have one, a long, unexplained nonuse of water. Well, here, prior to 1997, there wasn't a nonuse of water because the water commissioner said take it, and it's not. But the water commissioner was saying that against the explicit determination of two court decisions, right? The water commissioner, I'm sorry, what? I thought there were two court decisions to the contrary. There are. In 1992 and 1996, the district court said the water commissioner had been doing it wrong. Certainly, anybody who was dealing with this water knew that that wasn't so, whatever the water commissioner was doing. The water commissioner may have been wrong as decided in 1992 and 1996, but significantly, the district court held that they were not going to change that practice because it was such a significant change in the administration of the decree until the water commissioner issued the then being irrigated rules, which did not go into effect until 1997. So although in 1992 and 1996, there were decisions made on that, the water commissioner, with court approval, continued to allocate that water in the same manner until 1997. It may have been wrong, but it was a longstanding practice. The court did not change until 1997. So from 1992 to 1997, the full allocation of water continued with the district court's approval. Okay. Now, when were these transfer requests filed? The transfer requests were filed in 2008. Right. So there was another 11 years. Okay. After 1997, Freeport began to buy the property. And this Court in the Alpine cases said, when you have a new owner who manifests an intent not to abandon and no period of abandonment could be found, which would be true here. But this land was being used for, had, I think, a road and some kind of, I don't know, a couturemen sonnet that were inconsistent with the facts found by the district court are undisputed. Freeport bought this property for its water right. Freeport entered into leases with its lessees for its water right. But this particular 1.4 acres had, could not, as it was then configured when Freeport used it, be used to irrigate land. Is that right? Yeah. But it's just not a long time of nonuse. It's the intent that's paramount. And I understand. What I want to know is now we have between 1907 and 2008. Freeport, Freeport did everything to manifest its intent not to abandon. And one important point on that is that it didn't use the water. But why didn't it use the water? It was in negotiations with the Gila River Indian community. And one of the important points of that was to get the upper, the UV forbearance agreement, which the parties thought would allow Freeport to make severance transfer and all the UVDs without the community objecting. Now, that didn't turn out to be the case. Freeport now understands that. But that does not change the fact that Freeport negotiated that, participated in obtaining the Federal legislation so the rights under that could be congressionally approved. And then on the very first date they could, they filed the severance transfer applications, all of which shows an intent not to abandon. And that's not to say that Freeport didn't have the intent to use those water rights someplace else. Correct. Okay. I'll reserve. I know I don't have my time. We'll give you a couple of minutes on rebuttal and we'll hear from Mr. Eckstein. Thank you. Thank you. Good morning. My name is Paul Eckstein. I'm appearing on behalf of the Amici-Curiai Irrigation Districts and the individual applicants. There are four ways in which this Court could have jurisdiction. Final judgment, no party argues that there is final judgment. 54B, that was presented to Judge Bolton and denied. 1292B, that was presented to Judge Bolton and denied. 1291A, that is before the Court. What do you mean by 1292B was presented and denied? That's, that's, I mean, isn't that a legal question, whether there is in fact an injunction or not? The Court has discretion to determine whether there is a controlling question of law and denied the motion. That's 54B, but I'm asking about the injunction, whether there's an injunction. Your question is? How does Judge Bolton decide that? I mean, why is that up to her to decide? She doesn't decide the question of 1291A, but you decide whether the appellant here moved to dismiss its appeal, which it did and it hasn't been ruled on. At the very outset of this appeal, the motion panel issued an order to show cause and a brief was filed by the appellant moving to dismiss the appeal on the grounds that it had not filed an appeal under 1291. The motion panel waited some time, I think until February, before it issued its ruling. It did not deny the motion to dismiss. It merely discharged the order to show cause. But even if it had denied the motion to dismiss, this merits panel would have had the opportunity and should exercise the opportunity to dismiss the appeal. The appellant controls whether it is going to appeal and under what section. And that is what's important about it. Kagan. I think it would make more sense for us to stay this appeal, wait for the other case to come forward. And there is a case. The cases go to come to us, come to somebody on this Court sometime soon, as I understand it. It's all been briefed. We can make you all rebrief it and fill out more paper, or we could in some sensible way try to get the merits of the case before us, or at least wait until it gets before us properly. The amici have a disagreement with the other parties as to what the case is. When Judge Bolton separated the Freeport-McMorrin cases out, it did it for administrative convenience. What the Court said was that it was part of the sub-case and that it was done administratively. So there are several hundred. There are several hundred cases that are pending by the individual applicants that will be heard at some point. And I think Judge Bolton's denial of 54B was instructive in that regard. And as I understand it, oh, excuse me, I'm sorry. So you think we have to wait for all of them? That it's not good enough just to wait for this subcategory? Absolutely. It's all part of the case. It's all part of Globe Equity 59. The Globe Equity 61 case is not a separate case. It's a sub-case and was separated for administrative reasons. And Judge Bolton's order makes that absolutely clear. And as I understand it, there are counterclaims which have not yet been addressed. Is that correct? Well, that's another complication. There are counterclaims in the 61 case that have not been addressed. So while I think this matter will be heard within some time, it's not going to be final in a matter of months, more like a matter of years. When do you think it would be appropriate for Judge Bolton to issue a 54B certification? I don't think it's appropriate for her to issue 54B language until she's heard at least some of the individual applicants' cases. She says that she can't rule out the possibility that the individual applicants who are farmers, who have different interests than Freeport McMorrin, will present different evidence and present different legal arguments. For example, on the Prima Fascia case, the individual applicants definitely will present evidence on that. On abandonment, the individual applicants will present different evidence on that. And that's what drove the case. With regard to different parcels of land, right? Yeah. Yes. So what is the argument, other than a very technical one, why all these different applications have to be part of one case? I mean, I gather your technical one is that it's all Case 61. But aside from that, this one's 59. But you are saying that you use the big case. Case 59 is the big case. Case 61 is the sub case. All right. So your view is that it has to be all of the applications because? Because the individual applicants haven't had their day in court. They haven't had an opportunity to present the facts. But they will. That doesn't control how the appeals go forward. Well, we're concerned that determinations will be made that will prejudice the individual applicants before they've had an opportunity to present evidence and present legal arguments to Judge Bolton. And that was her concern when she denied Rule 54b. Your concern is that our decision on the merits of Freeport's applications might prejudice your clients in their subsequent application. Absolutely. That's exactly our concern. Okay. We understand your position, and you've more than used the three minutes that we generously gave you. Yes. Thank you very much. Okay. Thank you. We'll hear from Matt Apples. May it please the Court. John Smeltzer for the United States. Your Honors, the United States was the plaintiff in the original decree here and holds in trust rights for the Gila River Indian community and the San Carlos Apache tribe. The U.S. filed objections to the transfer applications in that capacity as the trust holder for the rights for the tribes. But, of course, we all filed separate objections, and the other counsel are here to argue, too, so I'm going to try to keep my remarks relatively brief. Starting with the jurisdictional questions, we submit that the Court doesn't have jurisdiction, either final or interlocutory jurisdiction. That's the United States' position. With respect to final jurisdiction, we think the Court would have final jurisdiction at the point the Court resolves all of the cases that were consolidated from pre-court. Does that include the counterclaims? That would include the counterclaims that were raised in that, in that case number 61, that case. But it would not we don't agree with the amici that it would include all of the applications. We submit the applications could be in the normal circumstance. An application to change use could be an independent post-judgment action. But he can't. Ginsburg. With regard to the 1292 injunctive or interlocutory jurisdiction, my understanding is that there is a difference in the most recent agreement, the change of what transfer or whatever the agreement, with regard to how you're setting up the transfer applications, which seems to provide that the Commissioner can approve the transfer applications but absolutely cannot approve or determine abandonment questions. That's correct. But the Commissioner can't approve any objected application. The Commissioner could. There is an abbreviated proceeding where the Commissioner could approve a transfer that's signed off on then by the court, where the court would enter an order if there's no objection. Here there are objections. None of these could have been decided by the Commissioner. My question is whether that difference is not pertinent to the question of whether the 1.4 acre abandonment issue is an injunctive, even though the transfer applications are not. Your opposing counsel said they're all similarly amendments or changes to the original decree, but I'm not sure that's true. Well, ultimately, I think they were all a request to change. Originally, the applications were a request to change the decree. The Court, in its abandonment ruling, actually did change the decree and did not, because it didn't grant the transfer applications, did not make a notation or a change to the decree language permitting the transfer. If it had granted any of those, would it have, in fact, changed the decree in light of what I gather is essentially an amendment to the decree, which is the rules governing the transfer applications? I don't think that those are procedural rules that affect the how applications are brought to the decree. I don't think that that didn't amend the substance of the decree, which is you have to, in order to transfer, you have to show that there's not an absence of injury and comply with legal requirements. Our position on 1292a is that the standards in Carson v. American Brands would apply, and we don't believe they were met here. The community takes a different point, and I'll let community counsel argue that point. Unless the Court has questions from the United States on finality, I would move to the merits points that have been raised. Who among your side will be defending jurisdiction? The community's attorney, Ms. Melton. All right. Very well. Thank you. Quickly, just two points on the merits. On the issue of the prima facie case on injury, it is the United States' position that what Freeport did was to make a legal argument that there was no possibility of injury, given the priority of rights in the system, in the decree and in the call system, and that we believe is not sufficient, given the reality of hydrology on a river, that when you change where rights are being used, you change the aspects of the flow, which can cause injury to a senior party, which is evident by the fact that even though the tribe does have senior rights at present, the tribe has had difficulty having its needs met, as evidenced by the very information that Freeport has brought forward, the water quality injunction. And one of the critical things here in this case that involves some transfers from the Safford Valley that were direct diversions up to the Duncan-Verdon Valley, which will be diverted by pumping, and that takes it outside of the water quality injunction, and it adds an element that makes it much more difficult to call, and that water is much farther away, and now you have the pumping and you have the time lag, when you stop pumping, you don't stop diverting from the river, as the evidence showed. So all those make it much more difficult to add a lot of issues with respect to how these transfers are going to affect rights. They put on no evidence with respect to it, and we submit that the Court was absolutely correct in saying it did not make the prima facie case. And the last point I want to make is just with respect to the abandonment inquiry. We submit that Freeport makes a fundamental error in its abandonment analysis by conflating the concept of use of water with the use of a water right. What's at issue here is the use of a water right that's a pertinent to a particular area of land, in this case the 1.4 acres. Freeport says there was potentially unexplained use. The use was not unexplained. Freeport's predecessor in interest decided to put a road on that 1.4 acres of land. And the question is, at that point you put a road there, when there's no other place to put that water, no other place to use it, are you abandoning the right to put water on that 1.4 acres? And there's a strong presumption that when you build something that's incompatible with irrigation, that's exactly what you've done. The Court applied this Court's precedence in the Alpine cases correctly to find abandonment. Let me make sure I understand the government's position with respect to jurisdiction. When is jurisdiction going to be appropriate in your opinion? At the completion of the cases that were consolidated. Rule 54 applies by analogy. 59 cases that? No, the 61. 59 is the major case. 61 is the new one that was created out of the 59 applications, which is the confusion in numbers. Yeah, yeah, yeah. Okay. Thank you, Your Honor. It's the case involving the 59 applications. The Freeport application. Freeport application. All right. Thank you. May it please the Court, Patricia Millett, on behalf of the Gila River Indian community. The way Judge Berzon, for this case to be expeditious in resolving issues, is to address the abandonment question over which jurisdiction does exist under 1292a1. Why is that? Because this issue is here before the Court. It will not come up again. The abandonment decision is not left to be decided in the remaining counterclaims. This abandonment decision is a final ruling as to these 1.4 acres. Secondly, a lot of those counterclaims that have been referenced are raising abandonment and forfeiture. So this Court's decision on that issue will have and will offer assistance to the Court guiding the other resolution of abandonment and forfeiture claims going forward. This gets a little confusing, but was Judge Bolton ever asked to certify the abandonment claim alone? She was asked to certify the entire order under 54b, which would have included that, but she didn't need to certify under 54b something that can be appealed under 1292a1 as a modification of an injunction. Injunction. Right. Your position is that only the abandonment issue is an injunction or that all of it's an injunction, but that nobody else is asking for our ‑‑ us to exercise our injunction. It's the former. And that is that the abandonment decision is the only aspect that expressly modified the decree. And there doesn't seem to be any dispute, if I'm understanding everyone correctly, that that's exactly ‑‑ this was a modification of an injunctive decree. And that's what occurred here. And why wasn't the denial of the transfer ‑‑ which were denials, but the jurisdiction runs to denials or grants, so what's the difference? Two reasons. First of all, those were about prejudice that could go change their applications and come back again. A lot of it was, as we've spelled out in our brief, a lot of technical information that was missing. But most importantly, and it's Judge O'Scanlan's opinion in Thompson v. Enomoto, when you're dealing with consent decrees in particular, you need to step back and ask yourself, is this an implementation of the decree itself? Are you simply exercising rights that the decree itself creates? And that's what was procedurally resolved. Or actually changing the injunctive decree. So when you apply ‑‑ the original decree back in 1935 allowed people to transfer water rights. Nothing changed when they set up a procedural mechanism for doing the transfer and sever process. That didn't modify the injunction. It implemented the injunction, just as the Thompson v. Enomoto decision explains. But the ‑‑ But it did require a judicial approval in any event, right? Because it's a consent decree, yes, absolutely. No, but approval of the transfer applications. Yes, because that is to ensure that the protections under the decree are not altered. So the rights are, for example, the injury showing that rights are not altered under the decree in the process. So you want to double check to make sure that they are actually implementing the decree through the transfer and severance, as opposed to altering rights under the decree if you have, as many of the applications here are, invalid ones that seek to transfer water rights that don't exist, or for any reason that someone could have an improper application. So it's checking to make sure we're just implementing what the decree already allows. And the difference here with the abandonment decision is that you actually permanently altered legal rights. And, again, if you take the Hook decision that we cite in our brief and the Thompson v. Enomoto and put them together, it makes this ‑‑ I know it's a foggy area, but it makes this line relatively clear. And that is the distinction between implementing and actions pursuant to a consent decree and actions that change the injunctive aspects of the decree. And so that's where we get the 1292a1 jurisdiction for the abandonment determination. Now, this Court's precedent allows it ‑‑ the whole order comes up, of course, and this Court precedent allows the Court to consider issues that are inextricably bound up with the injunctive aspects of the order. That's your decision, Judge Berzon, in the Bates v. United Postal Service case. And the value would not, for this Court deciding the abandonment decision is not only exercising jurisdiction it has after we've all briefed, we're all standing here, and it's telling that the appellant's brief, you look at the conclusion, both the opening and reply brief, they ask for a ruling on the merits. They just don't want to cite 1292a1 for a reason I don't understand. But we can have a legal resolution of that, but we can also, as part of ‑‑ Kagan. What about Carson had other requirements other than that there be an actual change in the ‑‑ This Court's ‑‑ this Court, that's absolutely true, but that applied in that case because there was no injunction. In fact, what happened in Carson was the Court refused to adopt a consent decree. The Carson test is this Court ruled in the Sheeha-Attica case, which we cite in our brief, that that Carson test only applies when you're dealing with things that don't fall within the text of 1292a1. They aren't denying, granting, or modifying injunction. They're just kind of like that. So what Carson does is expand 1292a1 beyond its text. So if you're trying to go beyond the text of 1292a1, you have to show Carson. Sheeha-Attica from this Court was crystal clear. If you're squarely within the text of 1292a1, which is modifying an injunction, that's the plain text of 1292a1, then you don't have those extra factors that have to be shown. So Carson doesn't apply here. Sotomayor, what is the effect of the ‑‑ if we were to agree with you that we should decide the abandonment part of this because it is different in nature from the denials of the application, what would the potential effect of that decision be on the claims of the other farmers? The claims of the other, not Freeport's other claims, but the claims of the other farmers? It would be nothing other than the ordinary stare decisis effect of legal ruling. So this Court would make clear the legal rules for abandonment and how they apply to this particular determination by the judge, and that, of course, would govern not only farmers here, but every other abandonment case that comes down the pike that this Court decides. This Court would simply lay out the legal rules. Every farmer would still have presumably their own factual showing on abandonment, and a different factual showing might implicate different legal rules. And so it would be nothing other than this Court would issue in a decision on abandonment. Who knows how many people within the entire Ninth Circuit right now have abandonment claims that could be implicated one way or the other by that legal ruling. That's the only effect it would have on the farmers. You're not going to decide facts, and you're not going to decide how the legal rule that you announce applies to their facts. That's completely different. Scalia, suppose we just simply conclude that the findings were not clearly erroneous. Does that send a message to anybody? Well, at least to Freeport. But they certainly were not clearly erroneous in this case. But I think one thing that's really important, and again, to the extent the goal here is to understand that there are values in this Court clarifying the law in this area. This is longstanding decree in litigation. It would be nice to have the closure that we can have. There's central argument under abandonment. A lot of closures. We're trying to get every 1.4 acre of closure that we can. And in this case, their central argument on abandonment is the same one that you see on the merits, and that is we couldn't have abandoned it because it's our water right that exists independently of the land, and the Court failed to take account of that, and so recognizing that their challenge to her factual finding is asserting a legal proposition that's flawed would be very helpful going forward. Thank you. We've more than used your time. We should hear from Mr. Sparks. May it please the Court. I'm Joe Sparks for the San Carlos Apache Tribe. I just wanted to address momentarily the issue about the injunction. In the decree, the place of use, the land to which the right is a pertinent,  Article 12 of the decree is an injunction adjoining parties from using the water at any other location for any other purpose at any other time on any other land without the approval of the Court under Article 11. And Article 11 is the one that says that you can make an application to the Court to change the place of use or the purpose of use to another location as long as you can do so without injury to the rights of others. So that's the way the injunction works as to every one of these changes. I thought the application is to the Commissioner. I'm sorry. The application on the transfers is to the Commissioner. Well, the application is to the Commissioner, but ultimately it's to the Court, because under the decree it's the Court that decides whether the application for a severance transfer would injure or not injure or be granted or not granted. The application to the Commissioner is simply an interim administrative process set up under the 1993 rule to evaluate and make sure that the elements required of the Court in the 1993 were present in the applications. That's the reason it goes to the Commissioner first. Doesn't the Commissioner make a decision on that? I'm sorry? Doesn't the Commissioner make a decision on that? The Commissioner makes a decision as to whether the elements of the application are present or not. That's what the Commissioner decides. And if they are not all present, then the Court says, then the rule says you're supposed to deny it. If they are present, then he recommends to grant or not to grant to the Court. Then the Court in all instances decides whether to grant the severance and transfer. So it's expressed in the 1993. Based on the recommendation of the Commissioner. Based on the recommendation. But there is a hearing and an evidentiary hearing. I wanted to point out also that under the injury rule, Article 11, which is incorporated into the 1993, it's an evidentiary question that is before the Court. The application must show that the and you have the right to sever and transfer your right if you can do so without injury to the rights of others. That's an evidentiary question. Now, in going to the other point about the jurisdiction, the Court, I understand, is troubled. But every one of these applications could, and if filed separately, would stand alone. I mean, simply that they were filed on the same or similar dates doesn't make them inseparable. But all the cases before the Court right now have been decided. There aren't any counterclaims pending before the district court on these matters. They've all been decided. So there's, I think, facility, great facility in this Court. It's not here. But they are here. These ten cases are here, and everything's been decided in those cases, including a forfeiture and abandonment question. The other part of the rule is that under the rule, it expressly says that if the water right has been abandoned or forfeited, the application cannot be granted. So the Court and the decree anticipate that that right could have been abandoned or forfeited. And so you're not going to come in later and try to re-up a decreed right that had been abandoned. Now, in these cases, the applications of these ten, San Carlos Apache is in the enviable position of being at the bottom of the river and above a lake where it cannot store water. It has to take the water from the flowing river. If it's not there or if it's poor quality or inadequate quality, it's simply its crop fails. That's it. It's the way it's always been and the way it's worked. And we have come before this Court on multiple occasions to try to get that fixed. Here, the rule says, as the decree requires, that the applications show, that the applicants show, and as a prima facie evidence in trial, that there will be no injury to others, any others. It's not just San Carlos. Here, I care about San Carlos. But the requirement is specific as to all the parties of the decree. Here, Freeport offered no evidence in its case in chief. It simply recited that San Carlos had a prior and senior right. We then put on evidence, the United States and the tribe evidence, that the change in location on the river upstream, for instance, would deprive the river of all that support flow all the way down to the former place of diversion. That, all of the rights in the river, all the water flowing in the river are required to take the water to somebody else. You have to have support flow to provide adequate head for diversion. And the previous cases before this Court have shown that in this case, flow, the higher the flow, the higher the quality of water, the lower flow, the lower quality. It's your ultimate position that if there was a prima facie case, it was rebutted or, although that's not what the district court found, the district court simply said there was no prima facie case and never really went to the strength of your evidence, as I understand. They never put on any evidence of injury. But you said that you then put on some evidence of injury. We did. And the question is, where does that fit into this appeal at this point? That evidence, well, simply, it is to show that if the argument by Freeport is that simply the recital of a priority and the existence of injunction is evidence making, shifting the burden from the prima facie burden to the United States and the tribe, then we have gone forward with that evidence and provided material evidence that there will be injury. And the court did evaluate that evidence and found that, for instance, moving the point of diversion from a canal miles upstream to a well would cause conditions in the stream to vary dramatically, including the time when a condition on the river would occur. And so the court did evaluate that evidence and found that the river would dry up at that point, and the length of time it would remain dry, and also shifting it to a well as opposed to a canal would cause the river to, if under the call system you said to the well owner, stop pumping, San Carlos didn't get any of its water or its water quality, they would stop pumping. But the river would not respond for days or months. And that's exactly what their own. You've more than gone over. But your position is that they didn't make any showing of lack of harm and you made an affirmative, and even if they didn't have to, you made an affirmative showing of the harm. That's right, Your Honor. Thank you. Are there any further questions? On behalf of the Apache tribe and I'm sure all the parties in this room, Your Honor, we thank you for your career contribution to the court. Thank you. Thank you. I'll be brief. Under 1292, if jurisdiction exists, it exists for everything, because the change, the severance transfer of a water right is a right set forth in the decree. And if you seek to move that, you seek to change the decree, which is injunctive in nature, and the failure to grant that is appealable under 1292 just as a modification or failure to modify. So to the extent the court believes it has jurisdiction under 1292, it has it over everything, because the court either modified the decree by having an abandonment or failed to. On the prima facie case, we would point the court to the Ordich case. It's a district court where the Paiute tribe of Indians attempted to transfer a water right. And what the court said there is that the decree sets forth the rights of the party, and once the tribe established that, that was the baseline condition, and it then made the objecting parties come forward with specific evidence showing injury. That's what Freeport did here. That case applies. But they say they did that. They say they did come forward with specific evidence. They did not, Your Honor. They came forward with questions and issues, no specific evidence. And, in fact, if you look at the court ruling, it found not that there was any injury, but that possibilities of injury existed. But it is your position that as long as they can make the call, they haven't been injured. Correct. All right. And then on abandonment, we just point the court to the four tests set down by this court in the Alpine line of cases. The first one is, is if you use the water right, it can't be abandoned. And that's the very first test. And the fact that 1.4 acres may not have been used for a certain period of time. You're talking about using the water right or using the water? Using the water right. And how does one use the water right? By having the Commissioner allow all the water to be diverted to the extent it's available for the entire water right, Your Honor. And that's what this Court has said in the Alpine line of cases, as well as there are two others, but I just wanted to go back to that one. Unless the Court has questions, I thank you for your time. Thank you. The matter just argued is submitted for decision. The Court, this for this session, stands adjourned, and the Court will reconstitute itself and reconvene at 11 o'clock. Thank you. Thank you. All rise. Thank you. This Court, this session, stands adjourned.
judges: Schroeder, O'scannlain, Berzon